[No. B142004. Second Dist., Div. Four. Mar. 21, 2001.]

ELLER MEDIA COMPANY, Plaintiff and Appellant, v.
CITY OF LOS ANGELES et al., Defendants and Respondents.

## COUNSEL

Richard Hamlin and Paul A. Jacobs for Plaintiff and Appellant.

James K. Hahn, City Attorney, Claudia McGee Henry and Sharon Siedorf Cardenas, Assistant City Attorneys, and John C. Cotti, Deputy City Attorney, for Defendant and Respondent City of Los Angeles.

Law Offices of Kathryn Reimann, Kathryn Reimann; Dov S. Lesel and Curt Holguin for Defendant and Respondent Community Redevelopment Agency of the City of Los Angeles.

## OPINION

**EPSTEIN, J.**—In this case we hold that the trial court correctly sustained demurrers to a complaint seeking an order that applications for permits to erect billboard structures be deemed approved.

## FACTUAL AND PROCEDURAL SUMMARY

Appellant Eller Media Company constructs outdoor billboard structures for the purpose of renting to advertisers. In April, May, and June of 1999, it applied to the Department of Building and Safety of the City of Los Angeles (City) for permits to construct three billboard structures. One was to be constructed on Sunset Boulevard, one on Cahuenga Boulevard, and one on Pico Boulevard. Only the first two applications remain at issue; appellant has received approval on the third.

Both the Sunset and Cahuenga sites are within the Hollywood Redevelopment Project area. Pursuant to Health and Safety Code section 33372, the Community Redevelopment Agency of the City of Los Angeles (CRA) is authorized to carry out the Hollywood Redevelopment Plan. Accordingly, the City referred appellant's applications to CRA to determine if they complied with the plan.[1]

Neither the City nor CRA made any determination on the applications. On October 25, 1999, appellant filed this action seeking to have its applications deemed approved pursuant to the Permit Streamlining Act (PSA; Gov. Code, § 65920 et seq.).[2] According to the allegations of the second amended complaint, the charging pleading, respondents City and CRA failed to approve appellant's billboard applications within the time limits set out in the PSA. For that reason, appellant claimed the applications should be deemed approved pursuant to section 65956, subdivision (b), and sought a writ of mandate directing respondents to issue the permits. The trial court sustained respondents' demurrers without leave to amend, and dismissed the action. This is a timely appeal from the judgment (order of dismissal).

## DISCUSSION

The PSA was enacted in 1977 "to relieve applicants from protracted and unjustified governmental delays in processing their permit applications." (*Bickel v. City of Piedmont* (1997) 16 Cal.4th 1040, 1046 [68 Cal.Rptr.2d 758, 946 P.2d 427].)[3] To expedite decisions on development projects, the PSA sets out specific time limits within which a government agency must approve or disapprove an application for a land use permit. (§ 65950.) If the

---

[1] See section 504 of the Hollywood Redevelopment Plan: "No . . . building permit, shall be issued in the Project Area from the date of adoption of this Plan unless and until the application therefor has been reviewed by the Agency and determined to be in conformance with the Plan and any applicable Design for Development."

[2] All statutory references are to the Government Code unless otherwise indicated.

[3] Subsequent legislation effected the holding in *Bickel* concerning waiver of time limits under the PSA. (Stats. 1998, ch. 283, § 5; see *Riverwatch v. County of San Diego* (1999) 76

agency fails to expressly approve or disapprove an application within the applicable period, "the failure to act shall be deemed approval of the permit application for the development project." (§ 65956, subd. (b).)

The PSA measures all time limits for final approval or disapproval of an application in terms of the environmental review process established by the California Environmental Quality Act. (CEQA; Pub. Resources Code, § 21000 et seq.) A public agency must approve or disapprove a project within 180 days from the certification of an environmental impact report (EIR), 60 days from the adoption of a negative declaration, or 60 days from a determination that a development project is exempt from CEQA. (Gov. Code, § 65950, subd. (a).)

■ Appellant alleged that CRA failed to review its applications and failed to determine whether they should be approved within the time limitations provided by CEQA guidelines. Appellant also alleged that the City failed to make a determination under the provisions of CEQA as to whether appellant's applications "are even subject to CEQA provisions, and if so, whether they are subject to a Negative Declaration."

As we have explained, the PSA measures time limits for approval or disapproval of an application from specific CEQA actions: the determination that a project is exempt from CEQA, the adoption of a negative declaration, or the certification of an EIR. Appellant's allegations, and the matters judicially noticed by the trial court, establish that none of those actions had been completed when appellant filed its suit.

Prior to hearing on the demurrers to the second amended complaint, CRA issued initial studies for both applications. As to the Sunset Boulevard sign, the initial study required preparation and certification of a supplemental EIR. For the Cahuenga Boulevard sign, the initial study required modification of the proposal before CRA could prepare a mitigated negative declaration. Until the supplemental EIR was prepared for the Sunset sign, or the mitigated negative declaration issued for the Cahuenga sign, the time for approval or disapproval pursuant to the PSA did not begin to run.[4] Appellant therefore cannot state a cause of action establishing a right to have its applications deemed approved pursuant to section 65956, subdivision (b).

Appellant also alleged that respondents failed to issue their initial studies within the time required by CEQA guidelines. (See Cal. Code Regs., tit. 14,

---

Cal.App.4th 1428, 1439 [91 Cal.Rptr.2d 322].) That issue is not presented in the case before us.

[4]These actions had not been completed at the time the demurrers were heard.

§ 15102.) Unlike the PSA, CEQA contains no "deemed approval" provision for cases where an agency fails to comply with the time requirements for environmental determinations. (See *Land Waste Management v. Contra Costa County Bd. of Supervisors* (1990) 222 Cal.App.3d 950, 962 [271 Cal.Rptr. 909]; *Meridian Ocean Systems, Inc. v. State Lands Com.* (1990) 222 Cal.App.3d 153, 168 [271 Cal.Rptr. 445].) "CEQA itself contains no automatic approval provisions and its time limits are directory rather than mandatory." (*Riverwatch v. County of San Diego, supra,* 76 Cal.App.4th at pp. 1440-1441.) Imposing an automatic approval process on CEQA is not dictated by the terms of either CEQA or the PSA, "and is inconsistent with the obvious distinct treatment environmental issues are accorded under the PSA . . . ." (*Id.* at p. 1441.) Allegations that the CEQA determinations were not performed in a timely manner are not sufficient to state a cause of action for deemed approval of the applications.

The affirmative factual allegations in appellant's second amended complaint establish that appellant cannot state a cause of action establishing a right to have its permit applications deemed approved. The trial court properly sustained respondents' demurrers without leave to amend.

Other interesting questions are presented by the parties, including designation of the lead and responsible agency, applicability of the PSA to a project which requires both ministerial and discretionary approvals, and the availability of administrative remedies, but it is not appropriate to reach them in light of our ruling on the issue we have decided on this appeal.

### DISPOSITION

The judgment is affirmed.

Vogel (C. S.), P. J., and Hastings, J., concurred.

Appellant's petition for review by the Supreme Court was denied June 13, 2001.